OPINION OF THE COURT
Herbert I. Altman, J.
Defendant Conrado Pons moves to suppress communications obtained by the monitoring of his digital display telephone pager as well as any evidence derived therefrom. The resolution of this issue involves consideration of whether the interception required compliance with the eavesdropping warrant requirements of CPL article 700, the standards for a search warrant for intangible property or, for that matter, any prior court approval whatever.
Mr. Pons alleges that the interception of messages to the telephone pager device in question was in violation of CPL article 700, the Federal Communications Act (47 USC § 605) and various Federal and State constitutional provisions. Only those allegations relating to CPL article 700 will be addressed; the remaining contentions are alleged only in a conclusory fashion, unsupported by any specific legal or factual allegations.
The specific claimed violations of CPL article 700 are: (1) the Assistant District Attorney who made the application for surveillance was not an authorized "applicant” within the meaning of CPL 700.05 (5) and (2) that the People failed to (a) "demonstrate that normal investigative procedures had been tried and failed or reasonably appeared to be unlikely to succeed if tried or to be too dangerous to employ, to obtain the evidence sought”, as required by CPL 700.20 (2) (d); (b) "make a mechanical record of the interceptions, sufficient to 'protect that recording from editing or other alterations’ ”, as required by CPL 700.35 (3); (c) "establish a minimization plan” as required by CPL 700.30 (7); (d) provide notice of the surveillance within 90 days of termination, as required by CPL 700.50 (3); and (e) provide copies of the underlying surveil *1074 lance orders and related documents within 15 days of arraignment, as required by CPL 700.70.
The People contend that the monitoring at issue did not require prior court authority. They argue that the interception of information did not constitute electronic eavesdropping as defined in article 700 and that compliance with the provisions contained in that article was thus not required. They state that the monitored signals were radio transmissions, as to which the defendant had no legitimate expectation of privacy.
The prosecutor’s fallback position is that if prior court authority was required, the authorization here obtained, in the form of a search warrant for intangible property in compliance with the requirements of CPL article 690, was legally sufficient. They alternatively argue that, to the extent it was technically feasible, there was in fact compliance with article 700.
The device which was monitored, a digital display telephone pager, was believed to belong to defendant Pons and to be used by him, inter alia, to arrange the various arsons with which he is charged. It is capable of receiving electronic digital messages of up to 23 digits in length. As described in the moving papers "[t]he messages are sent to the device by an individual using a touch-tone telephone who dials a telephone number assigned to the device. Once a signal is heard, the caller presses the digits he or she wants to transmit.” It appears that the digits are then transmitted over radio waves to the portable pager, which emits a beep and displays the digits in visual light.
The People sought court authority to monitor Pons’ device in order "to view, on a duplicate remote telephone pager” the signals transmitted to Pons’ device by radio waves. Assistant District Attorney Peter Haskel stated in his affidavit in support of the monitoring application that "[t]hese signals are expected to consist only of telephone call back numbers and, in some cases, a digital code signal.” The order enabled Assistant District Attorney Haskel to procure an NEC display telephone pager, have it tuned to 152.84 megahertz and have its "CAP Code” set at 0002219, thereby enabling the monitoring of signals transmitted to the pager’s assigned telephone number (212) 707-2217.
The monitoring order, signed by Justice Stephen G. Crane, became effective on August 9, 1985 and was to continue *1075 through September 8, 1985. An extension order was sought on September 6, 1985 for the period through October 4, 1985. Defendant Pons was arrested on September 20, 1985 and the duplicate pager was deactivated and monitoring was discontinued on or about September 23,1985.
A.
I find that the provisions of CPL article 700, which relate to eavesdropping warrants, are not applicable to the monitoring of a digital display telephone pager. The statutory definition of "eavesdropping” does not include monitoring of the type of information which was intercepted here, namely, a string of digits displayed on a screen. The practical impossibility of a technical compliance with various of the statutory requirements (see, e.g., CPL 700.35 [3]; 700.30 [7]) additionally demonstrates the inapplicability of the statute to the device in question.
i.
An eavesdropping warrant is defined in CPL 700.05 (2) as "an order of a justice authorizing or approving eavesdropping.” "Eavesdropping” is defined in CPL 700.05 (1) as " 'wiretapping* or 'mechanical overhearing of conversation’ ”. "Wiretapping” is, in turn, defined in Penal Law § 250.00 (1) as, inter alia, "the intentional overhearing or recording of a telephonic or telegraphic communication by a person other than a sender or receiver thereof*. "Mechanical overhearing of a conversation” is defined in Penal Law § 250.00 (2) as the "intentional overhearing or recording of a conversation or discussion, without the consent of at least one party thereto”.
The monitoring at issue obviously did not entail "mechanical overhearing of conversation”, as no conversation, i.e., no exchange of thoughts or feelings was sought to be overheard or recorded. What was intercepted was the display of a sequence of digits which could, obviously, constitute a message, albeit not a conversation. The issue, therefore, is whether the monitoring constituted "wiretapping”.
The Court of Appeals has observed that "[t]he statutory language [of CPL article 700] is directed toward the aural acquisition of information, and does not mention the acquisition of visual images” (People v Teicher, 52 NY2d 638, 651). The telephone paging device in question does not enable parties to engage in traditional "telephonic communication”, *1076 namely conversations. It merely permits the conveyance of a series of digits, arranged in a desired order. While that order may very well convey information, it is not a conversation. Although a push button telephone is used to activate the display, no conversation is either overheard or recorded. Further, at the point of activation, the message is transmitted by radio waves and is not even a telephonic communication.
ii.
Two of the defects alleged by the defendant highlight the inapplicability of the eavesdropping statute to the device in question. Those purported defects were the People’s failure to comply with the minimization requirement contained in CPL 700.30 (7) and the recording requirement contained in CPL 700.35 (3).
The People acknowledge that the very nature of the device being monitored makes it impossible to comply with these two provisions by traditional means. The People proposed, with regard to the recording requirement, that the monitoring detective make notes of those digits appearing on the duplicate pager screen and that they be sealed every week. With regard to the minimization requirement, the People conceded that no alternative means of compliance could be devised because it was impossible to immediately determine whether a particular series of digits was pertinent to the investigation.
B.
The People argue that the monitoring in question was analogous to the use of a pen register, for which no prior court authorization is required (see, Smith v Maryland, 442 US 735; People v Guerra, 65 NY2d 60). The information obtained through the use of a pen register, all numbers dialed from a particular telephone, is available to the telephone company. As an individual has no legitimate expectation of privacy in records maintained by a telephone company (see, People v Guerra, supra, p 64), the use of a pen register does not violate an individual’s rights under the US Constitution 4th Amendment (see, Smith v Maryland, supra), or the State Constitution (see, People v Guerra, supra).
The monitoring of the telephone pager device is more intrusive than the use of a pen register. The pager device is capable of conveying substantive information by combining *1077 digits in various sequences. Both telephone numbers and coded messages may be conveyed.
Therefore, given the nature and capabilities of the device, I find that the defendant possessed a reasonable expectation of privacy in its use. Although the eavesdropping statute is inapplicable, compliance with CPL article 690 was required. That article is not limited to searches and seizures of tangible property. It has been held to govern the seizure of intangible visual images secured by video recording (People v Teicher, 52 NY2d 638, 652, supra), the taking of photographs (see, People v Matteo, 127 Misc 2d 112) and certain direct visual observations (see, People v Abruzzi, 52 AD2d 499, affd on opn below 42 NY2d 813, cert denied 434 US 921).
The interception in this case similarly involved intangible visual images — a series of digits, transmitted by radio waves, which were displayed on a screen.
In Teicher, the court held (p 654) that the standards announced in Berger v New York (388 US 41) and Katz v United States (389 US 347) "set[ting] forth the minimum constitutional standards governing the use of aural electronic surveillance” were "applicable with equal force” to video electronic surveillance. Those requirements deemed to be equally applicable were: (1) a showing of "probable cause to believe that a particularly described person is committing, has committed, or is about to commit a crime, probable cause to believe that the place where the activity is to be intercepted is being used or is about to be used in connection with the commission of the crime by that described person, and also probable cause to believe that a particular activity related to that crime will be observed through the use of video electronic surveillance”; (2) particularization in the warrant including "specification of the crime under investigation * * * the type of activity sought to be captured by the camera and * * * of the person expected to be seen performing the activity”; (3) minimization, and (4) a showing "that there are no less intrusive means for obtaining the needed evidence” (People v Teicher, supra, pp 654-655).
The court stated (p 656) that these requirements "should not be construed as an inventory of each of the necessary elements for such a warrant” and observed that "[t]he degree of intrusiveness inherent in video electronic surveillance demands unswerving adherence to each of the limitations placed upon the use of this device.” The court called upon the Legislature (p 656) to consider the enactment of "specific *1078 guidelines” as "the use of this investigative technique poses a threat to the privacy of citizens”.
An examination of the affidavits submitted in support of the monitoring order demonstrates that the People made a showing sufficient to support its issuance. The probable cause and particularization requirements were satisfied. The supporting papers also addressed the need and value of this investigative technique in addition to normal investigative procedures. The issuing Justice was aware that the nature of the device precluded compliance with the minimization requirement.
The monitoring of a digital display telephone pager "poses a threat to the privacy of citizens” (cf. People v Teicher, supra, p 656), in the same manner as video electronic surveillance. As in Teicher, the court was here authorized to issue a warrant pursuant to CPL article 690 for the seizure of intangible visual images.
The application to suppress communications obtained by monitoring digital display telephone pager number 707-2217 and any evidence derived therefrom is consequently denied.