OPINION OF THE COURT
George A. Grasso, J.
Defendant is charged with criminal possession of a weapon in the fourth degree (Penal Law § 265.01 [1] — a class A misdemeanor); and, unlawful possession of marihuana (Penal Law § 221.05 — a violation).[1] The People now move for an order, pursuant to Criminal Procedure Law § 240.40 (2) (b) (v), directing that the defendant submit to the taking of oral swab samples from his body for DNA testing and analysis in connection with an uncharged crime of criminal possession of a weapon in the second degree.
The People allege in their affirmation that on February 6, 2011, in front of a two-family dwelling, located at 617 Hegeman Avenue (Kings County), a uniformed police officer approached a group of seven males. In that group, the People allege that the officer observed the defendant grab his waistband, walk briskly into the aforementioned house and subsequently exit said premises, apparently returning to the group he had left. The People state that while the officer was questioning the group of males regarding their presence at the location, a ziplock bag of marihuana dropped from the defendant’s clothing. The People submit that as the defendant was being arrested, the officer recovered a gravity knife from the defendant’s pants pocket.
Subsequent to the occurrence of these aforementioned allegations, the People state that a male opened the door to the premises and invited the officer into the two-family dwelling. The People allege that once inside the dwelling,[2] the officer observed and recovered a Smith & Wesson .357 Magnum revolver and a 9 millimeter semiautomatic hand gun, in plain view, from inside an open cooler.
The firearms were vouchered on March 23, 2011. The People averred that the firearms were swabbed for DNA and the swabs *642 were given to the Office of the Chief Medical Examiner. The People purport that the findings from the Chief Medical Examiner’s Office indicated, “that a suitable amount of human DNA was found on the swabs for comparison.” (People’s affirmation at 2.)
It is the People’s position that “it is more likely than not” that defendant’s DNA will match the DNA found on the swabs taken from the firearms. (People’s affirmation at 2.) The People state that the factual allegations set forth in their affirmation establish that there is probable cause to believe that the defendant committed the crime of criminal possession of a weapon in the second degree. (People’s mem of law at 1.)
The People state that “[s]ince the defendant and the complainants[3] are strangers the defendant’s DNA on the pistol would be important in proving that the defendant possessed the weapon.” (Id.)
The People aver that the Fourth Amendment of the US Constitution affords no constitutional protection against intrusion into an individual’s body to compel a biological sample obtained by oral swab as nontestimonial evidence. The People maintain that in weighing the People’s interest to obtain the oral swab samples in furtherance of charging the defendant with an appropriate crime, against the defendant’s right to be free of bodily intrusion, “the People’s interest must prevail.” (Id. at 2.) Based on the foregoing, the People request that this court issue an order directing the defendant to submit to the taking of oral swab samples from his body in a reasonable manner, and by force, if necessary.
The defendant argues that the People have not established probable cause to believe that the defendant possessed the two firearms that were recovered from the premises. Defendant purports that the People are engaged in a fishing expedition to create a nexus between the defendant and an uncharged crime. The defendant maintains that the People have failed to establish: (1) probable cause to believe the defendant committed the crime of criminal possession of a weapon in the second degree; *643 (2) a clear indication that relevant and material evidence will be found; and (3) that the method used to secure the oral swab samples will be safe and reliable, as mandated by the Court of Appeals in the Matter of Abe A. (56 NY2d 288 [1982]).
Defendant contends that the United States Supreme Court has repeatedly held that the Constitution protects individuals from unwarranted search and seizure of their biological matter. Defendant states that in the instant case, the People have failed to allege facts that place the defendant in the apartment where the weapons were recovered, present any eyewitnesses that observed the defendant in possession, actual or constructive, of the firearms, nor do the People place defendant near the cooler from where the firearms were retrieved.
Defendant argues that the People’s allegations that defendant grabbed his waistband, walked briskly into the apartment building and exited said building shortly thereafter, are painstakingly insufficient allegations that do not establish, probable cause to charge defendant with any further crimes. It is defendant’s position that here, the People have engaged in a “fishing expedition” in an attempt to connect defendant with an uncharged crime.
In reliance on Matter of Holbrook (NYLJ, Mar. 18, 2010, at 25, col 4), the defendant argues that the court held therein that the People, as here, were closer to the beginning of an investigation when seeking a DNA sample of the suspect, a factor that led to the court’s denial of the People’s application. The defendant submits that the court determined that the People’s application for nontestimonial evidence lacked probable cause and had not shown a clear indication that material evidence would be found. As such, the court denied the People’s request. Defendant contends that the People’s instant application should be denied on a similar basis as the court rested upon in denying the People’s application for DNA samples in Holbrook.
Defendant further seeks a protective order that, if the instant motion is granted, would confine the results of the DNA test to remain within constitutional and statutory limitations. The defendant seeks to restrict the utilization of the DNA results solely to charges that may ensue from the instant investigation.
Discussion
This court is presented with the issue as to whether the People have met the statutory and constitutional mandates, as pertains to bodily seizure and search, in a manner that *644 demonstrates that their interest in compelling the bodily intrusion of the defendant to extract DNA, outweighs the defendant’s constitutional right to be free from the search of his person.
CPL 240.40 (2) (b) (v) reads in pertinent part as follows:
“2. Upon motion of the prosecutor, and subject to constitutional limitation, the court in which an indictment, superior court information, prosecutor’s information, information, or simplified information charging a misdemeanor is pending: ...(b) may order the defendant to provide non-testimonial evidence. Such order may, among other things, require the defendant to: . . .
“(v) Permit the taking of samples of blood, hair or other materials from his body in a manner not involving an unreasonable intrusion thereof or a risk of serious physical injury thereto.”
Upon the court’s consideration of a motion for an order pursuant to CPL 240.40 (2) (b) (v), the factors set forth in Matter of Abe A. (56 NY2d 288 [1982], supra) must be reviewed and analyzed. In the Matter of Abe A., the Court set forth the following test in deciding whether to grant a court order seeking to obtain a blood sample from the suspect. The court held that
“the People [must] establish (1) probable cause to believe the suspect has committed the crime, (2) a ‘clear indication’ that relevant material evidence will be found, and (3) the method used to secure it is safe and reliable. In addition, the issuing court must weigh the seriousness of the crime, the importance of the evidence to the investigation and the unavailability of less intrusive means of obtaining it, on the one hand, against concern for the suspect’s constitutional right to be free from bodily intrusion on the other. Only if this stringent standard is met, as we conclude it was here, may the intrusion be sustained.” (Id. at 291.)
In examining the first prong of the “stringent standard” established by the Court of Appeals, this court must determine if there is probable cause to believe the defendant has committed the crime. In Matter of Abe A., the facts presented established that Abe A was found “bludgeoned to death in his Manhattan apartment.” (Id.) The evidence suggested that a violent struggle had taken place. The deceased bore multiple head lacerations, a severely contused face and a crushed larynx. There had been no *645 sign of forced entry, blood was found throughout the apartment and five missing teeth from the deceased mouth were found scattered on the floor. Abe A.’s business partner, Jon L., claimed that he had become concerned that his partner had not been present at a business appointment, and that fact coupled with learning that his business partner’s car remained in the building’s garage compelled him to call the police. An investigating detective who observed Jon L. on the scene noticed abrasions on his face, swelling and bruises on both of his hands and a tooth mark appearing on one of his hands. Jon L. stated that the injuries resulted from a mugging that occurred the day before at 4:30 p.m. during a subway station robbery. Jon L. informed the officer that he did not report the robbery to the police, although it had resulted in him being unconscious for approximately an hour. Jon L. averred that the robber had not taken the wrist watch that he initially sought. A police investigation was unable to confirm that Jon L. had been mugged.
An analysis of the blood found in Abe A.’s apartment revealed two blood types, one that matched the deceased and another of an extremely rare blood type found in less than one percent of the population. The District Attorney asked Jon L. to submit to the taking of his blood samples for testing, but Jon L. refused. Ultimately, the Court of Appeals, reversing the Appellate Division, reinstated the order at Criminal Term granting the application.
The Court of Appeals determined that the judicial authority to compel the production of blood was equivalent to the judicial authority exercised by a court when issuing a search warrant. The Court found that CPL 690.05 (2) fits the search warrant bill. The Court stated that, it
“empowers a criminal court to order ‘a search . . . of a designated person’ in order to seize specified property which, as defined in CPL 690.10 (subd 4) ‘ [constitutes evidence or tends to demonstrate that an offense was committed or that a particular person participated in the commission of an offense’. It requires no reach then to hold that the blood samples which are the target of the order in the proceeding before us now come well within these provisions (cf. People v Teicher, 52 NY2d 638, . . . ).” (Matter of Abe A., 56 NY2d at 294.)
In determining that there was sufficient facts to justify Criminal Term’s finding of probable cause to believe that Jon L. *646 committed the crime that was being investigated, the Court noted that Abe A. had been readily accessible by his business partner Jon L. and that Jon L.’s injuries reflected the type of injury the assaulter would have borne as a result of attacking Abe A. The tooth mark that appeared on one of Jon L.’s hands was an especially telltale injury that linked to the evidence at the crime scene. Additionally, Abe A.’s murder and Jon L.’s unreported injuries occurred during the same point in time. Finally, the police investigation of Jon L.’s alleged robbery did not yield a single corroborating witness. Given the totality of the circumstances and based on the facts presented, the Court concluded, as a matter of law, that probable cause had been established.
The Court of Appeals having likened the application for an order for nontestimonial evidence to “comport with all the requisites of a search warrant” (Matter of Abe A., 56 NY2d at 294), applied the constitutional safeguards embedded in the Fourth Amendment to nontestimonial evidence on two levels: (1) “ ‘the “seizure” of the “person” necessary to bring him into contact with government agents’ and, (2) “ ‘the subsequent search for and seizure of the evidence’ (United States v Dionisio, 410 US 1, 8).” (Id. at 295.) In so doing, the Court stated that in Dunaway v New York (442 US 200 [1979]), the Supreme Court “squarely held that the seizure of a person can never be undertaken for less than probable cause.” (Id.)
In delineating the Fourth Amendment safeguards afforded the defendant in the case before it, this court adheres to the principle that a formal charge for commission of a crime is not a prerequisite to making the defendant available for DNA oral swabbing. As the Court stated in Matter of Abe A., “[w]e can find no case in which a court of general jurisdiction has been held to be without power to authorize a seizure or a search until a suspect is arrested and actually charged with a crime (cf. Zurcher v Stanford Daily, 436 US 547).” (Id. at 296.)
Charged with a crime or not, probable cause is one pivotal factor that spearheads a court’s determination to acquiesce defendant’s constitutional right to be free of bodily intrusion when delicately balanced against circumstances the People insist call for intrusion of the defendant’s body to provide DNA samples.
“ ‘The substance of all the definitions of probable cause is a reasonable ground for belief of guilt’ (Brinegar v United States, 338 US 160,. . . [1949]. . .). The standard requires an evaluation of probabilities *647 measured against ‘the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.’ (Id. at 175.) Probable cause turns on the totality of the circumstances, and, because it deals with probabilities, it is incapable of precise definition (see Maryland v Pringle, 540 US 366, . . . [2003]). Instead, it is ‘a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules’ (Illinois v Gates, 462 US 213, 232 [1983]).” (People v Garson, 4 Misc 3d 258, 271 [Sup Ct, Kings County 2004].)
In Matter of Holbrook (supra) a homicide was committed on March 26, 2009, at approximately 10:30 p.m., at 48 Eagle Chase, Woodbury, Nassau County, New York, a gated community with a 24-hour guard. The only two people who had access to the premises were the deceased owner’s sister and his cousin, Jovany Henrius. There was a shot heard by a neighbor at the date and time of the homicide, coinciding with a loud thud; and, soon after a second shot followed. Contemporaneously to the shots being heard, two vehicles were observed leaving the place of occurrence. A small blue car allegedly entered the gated community using the password “football” and the driver’s name was transcribed as Jubani. The wireless phone records obtained for Jovany Henrius resulted in showing that Jovany Henrius’ phone was in the vicinity of the homicide at around 10:30 p.m. and leaving the vicinity at around 10:45 p.m. The People alleged in their motion papers, that an officer who entered the premises on March 27, 2009, detected the strong scent of bleach, cleaning agents, blood and ballistic evidence.
After considering the People’s application for an order directing the suspect, Jovany Henrius, to submit to taking a buccal swab from the inside of his cheek, in applying the standard set forth in Matter of Abe A. to the facts asserted therein, the court found that “the People have neither established probable cause that Jovany Henrius has committed the crime under investigation nor have they shown the existence of a ‘clear indication’ that material evidence will be found if the request for non-testimonial evidence is granted.” (Matter of Holbrook, NYLJ, Mar. 18, 2010, at 25, col 4, supra.)
Here, under the totality of the circumstances, measuring the facts alleged by the People and in the light most favorable to the People, there is an insufficient basis to establish probable *648 cause herein. The People set forth in their application that defendant allegedly was standing in a crowd when he grabbed his waistband and walked briskly into the tworfamily dwelling. Upon exiting the dwelling, the People contend that the defendant returned to the group and in the officer’s presence, the defendant dropped a ziplock bag of marihuana. Upon defendant’s arrest, the officer recovered a gravity knife.
Subsequent to the defendant’s arrest, a male invited the officer into the two-family dwelling. There, it is alleged that the officer observed and recovered two weapons in an open cooler in plain view.
Based on the aforementioned facts, the People seek an order directing the defendant to submit to an oral swab to obtain his DNA, by force, if necessary. Based on these factual allegations a finding of probable cause is not warranted. It does not logically flow from the facts alleged that the defendant entered into the two-family dwelling and, more likely than not, placed the guns in the open cooler in plain view.
Unlike the suspect in Matter of Abe A., Jon. L., there is no credible evidence that demonstrates a nexus between the alleged crime and the defendant. The reasoning offered by the People is speculative at best in trying to connect the defendant with the guns. The facts presented herein are of an even less implicating nature than those facts presented in Matter of Holbrook, where the court denied the application for the buccal swabbing of the defendant.
This court will not base a probable cause determination on conjecture as to what vicinity of the two-family dwelling the defendant traveled and where that location was in relation to the weapons that were observed and recovered. A grab of the waistband, a brisk walk and an entering into a multiple dwelling, may link any unwitting person into the realm of “probable cause,” if this court takes the quantum leap necessary to grant the People’s application to have the defendant submit to oral swabbing of his person for DNA. Based on the facts presented here there is no finding of probable cause.
Additionally, there is no clear indication that material evidence will be found.
“To begin with, ‘clear indication’ that the intrusion will supply substantial probative evidence is a sine qua non (Cupp v Murphy, 412 US 291, 295, supra; Schmerber v California, 384 US 757, 770, supra). This requirement, by insuring that the evidence *649 expected to be found is of importance, guards against a ‘fishing expedition’. Needless to say, most often facts which would establish probable cause will also tend to establish the high degree of relevance the nontestimonial evidence sought would have (Schmerber v California, 384 US, supra, at p 770).” (Matter of Abe A., 56 NY2d at 297.)
The converse of the above-stated legal principle is applicable herein. Facts that fail to establish probable cause, as is the case in the instant matter, will likely tend not to establish a high degree of relevant nontestimonial evidence. Contrary to the People’s assertion, there is no clear indication that the defendant’s DNA will “more likely than not” appear on the weapons. The People have not provided a factual link that suggests that there is a rationale for their stated conclusion.
“The purpose of the non-testimonial evidence sought by the People should be to supplement evidence that they already possess and would conclusively connect the suspect to the crime. Instead the People appear to be using the non-testimonial evidence in this case as the starting point in their investigation.” (Matter of Holbrook, supra.) This observation appears to this court to be directly on point in the present matter.
Accordingly, for the reasons stated, the People’s motion for an order, pursuant to CPL 240.40 (2) (b) (v), directing that the defendant submit to the taking of oral swab samples from his body for DNA testing and analysis is denied.

. Originally, the charges against the defendant included the offense of criminal trespass in the second degree (Penal Law § 140.15). Said charge was dismissed on May 23, 2011.

. The People do not specify the part of the two-family dwelling the officer entered.

. The People appear to be making reference to an informant in the accusatory instrument, Daniel Jack, who, in connection to the original charge of criminal trespass, alleged that he was the custodian of the property. The accusatory instrument had set forth that Daniel Jack informed the officer that the defendant allegedly did not have permission or authority to enter or remain at the location. A supporting deposition signed by Daniel Jack was not served and filed. The People moved to dismiss the criminal trespass charge on May 23, 2011.