People v Dunham (2019 NY Slip Op 03409)





People v Dunham


2019 NY Slip Op 03409


Decided on May 2, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 2, 2019

110248

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
TODD W. DUNHAM, Appellant.

Calendar Date: March 27, 2019

Before: Egan Jr., J.P., Devine, Aarons and Rumsey, JJ.


Hug Law PLLC, Albany (Matthew C. Hug of counsel), for appellant.
Kristy L. Sprague, District Attorney, Elizabethtown (Michele A. Bowen of counsel), for respondent.



MEMORANDUM AND ORDER
Devine, J.
Appeal from a judgment of the County Court of Essex County (Meyer, J.), rendered April 23, 2018, upon a verdict convicting defendant of the crimes of sexual abuse in the first degree, criminal sexual act in the first degree and rape in the first degree.
Defendant was charged in an indictment with sexual abuse in the first degree, criminal sexual act in the first degree and rape in the first degree arising from him engaging in sexual activity with a victim who was allegedly unable to consent due to physical helplessness. Following a jury trial, defendant was convicted as charged. County Court sentenced defendant to concurrent prison terms of 3½ years for his sexual abuse conviction and eight years for his criminal sexual act conviction, a consecutive prison term of eight years for his rape conviction and postrelease supervision on each that merged into a 10-year term (see Penal Law § 70.45 [5]). Defendant appeals, and we now affirm.
Defendant does not dispute that he had a sexual encounter with the victim. He does argue that the victim was not "physically helpless" when the encounter occurred, and that the jury's finding to the contrary was unsupported by legally sufficient proof and against the weight of the evidence (Penal Law §§ 130.35 [2]; 130.50 [2]; 130.65 [2]). Physical helplessness is present when "a person is unconscious or for any other reason is physically unable to communicate unwillingness to an act" (Penal Law § 130.00 [7]; see People v Battease, 74 AD3d 1571, 1573 [2010], lv denied 15 NY3d 849 [2010]). Of note, "a person who is sleeping is 'physically helpless' for the purposes of consenting to sexual intercourse, particularly where the sleep was drug and alcohol induced" (People v Williams, 40 AD3d 1364, 1366 [2007], lv denied 9 NY3d 927 [2007]).
The victim here was visiting New York for a wedding and was staying at the home of defendant and his romantic partner, Marla Jones. The victim testified to having several drinks before the wedding and, after a brief ceremony, several more at the reception. She realized that [*2]she was drunk when she called her husband towards the end of the reception, and her husband testified that the victim sounded drunk during that conversation. A whiskey shot as she prepared to leave "really put [her] over the edge." She became nauseous and woozy during the ride back to defendant and Jones' residence, and laid down in the backseat of the car. Upon arriving, the victim went to the bathroom and knelt over the toilet to vomit. Her recollection was "very spotty" from this point forward, but she recalled defendant reaching under her sweater while she was braced against the toilet and groping her breasts from behind. She next remembers waking up in bed to find defendant wetting his fingers in his mouth, inserting them into her vagina, then subjecting her to anal and vaginal sex. She testified that she had no control over her body and was unable to react, which was consistent with the testimony of a physician who explained how an individual in an alcoholic stupor could be awakened by painful or frightening stimuli but would remain confused and without motor control. Defendant left the room when he was finished, and the following morning the victim left the residence with Jones after disclosing what she described as a nonconsensual encounter. In the electronic messages exchanged between Jones, the victim and defendant that day, defendant acknowledged that he had "lost control" and taken advantage of the victim, that he eventually realized that she was "either sleeping or just not interested," and failed to deny her flat accusation that he had raped her.
The foregoing proof reflected that the victim was insensible and unable to consent when defendant initiated the sexual encounter (see People v Wicks, 73 AD3d 1233, 1234 [2010], lv denied 15 NY3d 857 [2010]; People v Bush, 57 AD3d 1119, 1119-1120 [2008], lv denied 12 NY3d 756 [2009]), then physically unable to express her unwillingness to proceed (compare People v Teicher, 52 NY2d 638, 646 [1981], with People v Cecunjanin, 16 NY3d 488, 492-493 [2011]). It follows that, when viewed in the light most favorable to the People, there was legally sufficient evidence that the victim was physically helpless and unable to consent to any of the charged conduct (see Penal Law § 130.00 [7]; see People v Wilson, 164 AD3d 1012, 1013-1014 [2018]; People v Sene, 66 AD3d 427, 427-428 [2009], lv denied 13 NY3d 941 [2010]; People v Fuller, 50 AD3d 1171, 1174 [2008], lv denied 11 NY3d 788 [2008]).
The victim's account was open to question, with testimony from defendant, Jones and their friends that she did not appear to be intoxicated at the wedding reception and had been flirting with defendant throughout the day and evening. It was undisputed that the victim had imbibed, however, and defendant admitted that he had groped the victim while she was slumped over the toilet to vomit. Defendant's further testimony that he had a sexual encounter with a conscious, willing victim was undercut by the statements of both he and the victim the next day and, in any event, "presented 'a classic he-said she-said credibility determination' for the jury to resolve" (People v Kiah, 156 AD3d 1054, 1056 [2017], lvs denied 31 NY3d 981, 984 [2018], quoting People v McCray, 102 AD3d 1000, 1000 [2013], affd 23 NY3d 193 [2014]). "The state of the victim's physical helplessness at any given moment is largely a question of fact" and, after listening to defendant and the victim on that issue, the jury credited the proof that the victim was physically helpless at all relevant times (People v Teicher, 52 NY2d at 649; see People v Bjork, 105 AD3d 1258, 1261 [2013], lv denied 21 NY3d 1040 [2013], cert denied 571 US 1213 [2014]). Accordingly, "although a different verdict would not have been unreasonable, we accord deference to the jury's determination that the victim's testimony was more credible than that of defendant and conclude that the weight of the evidence supports the verdict" (People v Kiah, 156 AD3d at 1056; see People v Tucker, 149 AD3d 1261, 1262-1263 [2017], lv denied 29 NY3d 1087 [2017]; People v Thomas, 21 AD3d 643, 645 [2005], lv denied 6 NY3d 759 [2005]).
Turning to defendant's evidentiary arguments, County Court properly allowed testimony regarding statements that the victim made about the sexual encounter to her husband and a sexual assault nurse examiner. The testimony of the victim's husband as to what she told him about the incident when he picked her up at the airport served the nonhearsay purpose of explaining why he urged her to call the police, and County Court gave an appropriate limiting instruction to the jury (see People v Carney, 110 AD3d 1244, 1245 [2013]; cf. People v Ludwig, 24 NY3d 221, 231-232 [2014]; People v Coker, 121 AD3d 1305, 1306 [2014], lv denied 26 NY3d 927 [2015]). The sexual assault nurse examiner was also free to relate the victim's statements about the sexual encounter, as they were "germane to [the nurse's] diagnosis and treatment," and an appropriate [*3]limiting instruction was given (People v Spicola, 16 NY3d 441, 451-452 [2011]; see People v Hackett, 167 AD3d 1090, 1094 [2018]).
As for Jones' testimony during the People's case-in-chief, "County Court properly exercised its discretion in permitting the prosecutor to ask leading questions of the prosecution's own witness . . . inasmuch as" Jones was defendant's long-term romantic partner, her testimony differed from what she had previously told the prosecutor about the incident and County Court noted her recalcitrant demeanor on the stand (People v Jacobs, 298 AD2d 954, 955 [2002], lv denied 99 NY2d 559 [2002]; see People v Sexton, 187 NY 495, 509 [1907]; People v Dann, 14 AD3d 795, 797 [2005], lv denied 4 NY3d 885 [2005]). Defendant also contends that the People improperly elicited testimony from the victim regarding her morning-after disclosure of the sexual encounter with defendant to Jones. Jones had already testified about the conversation without objection, however, Jones' account was less detailed but not radically different from that of the victim, and the conversation explained the actions of the two women and defendant as the day unfolded. There was, as a result, nothing inappropriate in allowing the victim to provide her version of it (see e.g. People v Ludwig, 24 NY3d at 231; People v Gregory, 78 AD3d 1246, 1246-1247 [2010], lv denied 16 NY3d 831 [2011]).
Next, defendant complains of the expert testimony of the physician, Eike Blohm, regarding the effects of intoxication. The People alleged that the victim's intoxication contributed to her physical helplessness at the time of the sexual encounter with defendant. Blohm specifically explained the phases of intoxication, including the stupor phase of intoxication, and the physiological effects associated with each phase. County Court had every "reason to suppose that such testimony [would] elucidate some material aspect of the case that would otherwise resist comprehension by jurors of ordinary training and intelligence," and did not abuse its discretion in placing the testimony before them (People v Inoa, 25 NY3d 466, 472 [2015]; see People v Wilson, 136 AD2d 800, 800-801 [1988], lv denied 71 NY2d 974 [1988]).
Contrary to defendant's further contention, the jury was properly charged as to the definition of "physically helpless." County Court administered a charge on that issue that closely tracked the Criminal Jury Instructions, but added language that "[a] person who is sleeping is physically helpless for the purposes of consenting to sexual contact, particularly where the sleep was drug and alcohol induced." This charge, when viewed as a whole, "conveyed that it was for the jury to decide whether the victim's state of being asleep constituted physical helplessness" as required (People v Sene, 66 AD3d at 428).
Defendant also contends that he did not receive the effective assistance of counsel because his trial counsel did not raise the affirmative defense that defendant was unaware of the facts or conditions responsible for the victim's incapacity (see Penal Law § 130.10 [1]). His theory of the case, however, was that the victim had not had much to drink, was not incapacitated and was a willing and active participant in the sexual encounter. The affirmative defense would demand proof of the victim's intoxication that would have undercut defendant's own testimony regarding her conduct earlier in the day. It is incumbent upon defendant to "demonstrate[] the absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct" (People v Duffy, 119 AD3d 1231, 1234 [2014] [internal quotation marks and citations omitted], lv denied 24 NY3d 1043 [2014]; see People v McRobbie, 97 AD3d 970, 972 [2012], lv denied 20 NY3d 934 [2012]), and it was sensible to avoid presenting an inconsistent defense that would "create[] a risk of juror confusion and 'may well [have] taint[ed] . . . defendant's credibility in the eyes of the jury'" (People v Bradley, 88 NY2d 901, 903 [1996], quoting People v DeGina, 72 NY2d 768, 777 [1988]). His remaining claim of ineffective assistance involves matters outside the record that is better explored in the context of a CPL article 440 motion (see People v Dickerson, 168 AD3d 1194, 1195 [2019]; People v Retell, 164 AD3d 1501, 1502 [2018]).
Finally, County Court lawfully directed that the sentence for the conviction of rape in the first degree run consecutively to the others imposed because the convictions arose from "separate and distinct acts, notwithstanding that they occurred in the course of a continuous incident" (People v Soto, 155 AD3d 1066, 1067 [2017] [internal quotation marks and citation [*4]omitted], lv denied 30 NY3d 1120 [2018]; see People v Pena, 126 AD3d 618, 619 [2015], affd 28 NY3d 727 [2017]; People v Rosado, 56 AD3d 1215, 1216 [2008]). In view of the conduct for which defendant was convicted and his failure to accept responsibility for it, "we find no abuse of discretion or extraordinary circumstances warranting a modification" of the sentence (People v Shepherd, 83 AD3d 1298, 1302 [2011], lv denied 17 NY3d 809 [2011]; see People v Bartolillo, 47 AD3d 1122, 1122 [2008]).
Egan Jr., J.P., Aarons and Rumsey, JJ., concur.
ORDERED that the judgment is affirmed, and matter remitted to the County Court of Essex County for further proceedings pursuant to CPL 460.50 (5).