■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALPHONSO BUNCH, Appellant. [717 NYS2d 385] —Appeal by the defendant from a judgment of the Supreme Court, Kings County (Greenberg, J.), rendered July 10, 1998, convicting him

of criminal sale of a controlled substance in the third degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

Contrary to the defendant's contention, the Supreme Court did not err in refusing to discharge two sworn jurors. On the first day of jury deliberations, Juror No. 10 informed the Supreme Court that she thought she recognized one of the defendant's accomplices as "one of the persons who tried to rob her home." Since Juror No. 10 was not certain that she recognized the accomplice and since she assured the Supreme Court that she could remain fair and impartial, we all, including our dissenting colleagues, agree that the Supreme Court properly concluded that she was not "grossly unqualified" to serve on the jury (see, CPL 270.35; People v Buford, 69 NY2d 290; People v Johnson, 220 AD2d 270; People v Attanasio, 191 AD2d 447). Moreover, contrary to the contention of the dissent, any claim that the Supreme Court should have also conducted an inquiry to determine whether any of the other jurors were "grossly unqualified" is unpreserved for appellate review (see, People v Jackson, 209 AD2d 247).

Although not raised by the dissent, we note that the Supreme Court properly denied Juror No. 8's request to be excused. On the second day of jury deliberations, Juror No. 8 informed the court that she felt pressure to return to her ailing computer business. After a thorough inquiry, the Supreme Court determined that Juror No. 8 was not "unavailable to continue service" (see, CPL 270.35). As a general rule, financial hardship, standing alone, is not sufficient to warrant a discharge from jury service, especially when the trial is near completion (see, People v Hines, 191 AD2d 274; People v Nocedo, 161 AD2d 297; People v Molette, 129 AD2d 651). Moreover, the determination of the Trial Justice, who is in the best position to assess partiality, is entitled to great deference on appeal (see, People v Michael, 48 NY2d 1, 10; People v Rodriguez, 71 NY2d 214, 219). Accordingly, the defendant is not entitled to a new trial. Santucci, J. P., Sullivan and Altman, JJ., concur.

Friedmann, J., dissents and votes to reverse the judgment and remit the matter for a new trial, in the following memorandum, in which S. Miller, J., concurs: I respectfully dissent and would reverse the defendant's conviction and remit the matter to the Supreme Court, Kings County, for a new trial.

The defendant and two codefendants were charged with criminal sale of a controlled substance in the third degree. Although they were tried separately, the People introduced into evidence photographs of the codefendants during the defendant's trial.

During jury deliberations, the Supreme Court received a note from the jury foreperson stating that Juror No. 10 had identified codefendant Ellis Johnson as someone who had tried to burglarize her home.

In response to this note, the Supreme Court interviewed Juror No. 10, who conceded that Johnson may not have been the person who had tried to burglarize her home. Further, when the Supreme Court asked Juror No. 10 if this "affect[s] [her] in any way in deciding the issues concerning the [defendant]," she answered "[N]o, no, it does not." After the inquiry of Juror No. 10, the defense counsel asked for a mistrial, stating that the entire jury panel was tainted because Juror No. 10 had communicated her suspicions regarding Johnson to them. The Supreme Court denied that motion and, in response to the prosecutor's question, indicated that it would not raise the issue before the remaining jurors. Nevertheless, when the jury re-entered the courtroom, the Supreme Court informed them that it had received the aforementioned note, read the contents of that note, and stated that it had spoken with Juror No. 10, who "says it might not be him." The Supreme Court did not ask any of the other jurors whether Juror No. 10's suspicions would affect their ability to render an impartial verdict. Eventually, the jury returned a verdict convicting the defendant of criminal sale of a controlled substance in the third degree.

On appeal, the defendant argues, *inter alia*, that the Supreme Court improperly refused to discharge Juror No. 10 as "grossly unqualified" and that it erred in failing to determine whether the remaining jurors were tainted by the information provided by Juror No. 10.

CPL 270.35 provides that "[i]f at any time after the trial jury has been sworn and before the rendition of its verdict * * * the court finds, from facts unknown at the time of the selection of the jury, that a juror is grossly unqualified to serve in the case * * * the court must discharge such juror." The "grossly unqualified" standard "is satisfied only 'when it becomes obvious that a particular juror possesses a state of mind which would prevent the rendering of an impartial verdict'" (*People v Buford,* 69 NY2d 290, 298, quoting *People v West,* 92 AD2d 620, 622 [Mahoney, P. J., dissenting], *revd on dissenting opn below* 62 NY2d 708). In making such a determination, with limited exceptions, "the trial court must question each allegedly unqualified juror individually in camera in the presence of the attorneys and defendant" in order to "evaluate the nature of what the juror has seen, heard, or has acquired knowledge of,

and assess its importance and its bearing on the case" (*People v Buford, supra,* at 299).

I agree with my colleagues in the majority that the Supreme Court properly conducted an adequate inquiry of Juror No. 10 and determined that her suspicions about Johnson would not affect her ability to render an impartial verdict with respect to the defendant (*see,* CPL 270.35; *People v Buford, supra; People v Johnson,* 220 AD2d 270; *People v Attanasio,* 191 AD2d 447). However, the Supreme Court never questioned the other jurors to determine whether their knowledge of Juror No. 10's suspicions rendered any of them "grossly unqualified" under CPL 270.35. The Supreme Court's failure in this regard warrants reversal of the conviction and a new trial for the defendant (*see, People v Dotson,* 248 AD2d 1004; *People v McClenton,* 213 AD2d 1; *People v Thomas,* 196 AD2d 462; *People v South,* 177 AD2d 607). Finally, in my opinion this issue was adequately preserved for appellate review by the defense counsel's motion for a mistrial on the grounds that the entire jury panel had been tainted (*see generally,* CPL 470.05 [2]).