■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DARNELL A. LEADER, Also Known as JOHN NEELEY, Appellant. [728 NYS2d 289] —Spain, J. Appeal from a judgment of the County Court of Rensselaer County (McGrath, J.), rendered May 12, 1999, upon a verdict convicting defendant of the crimes of murder in the second degree and criminal possession of a weapon in the second degree.

Defendant was convicted, following a jury trial, of intentional second degree murder and criminal possession of a weapon. The convictions were based on an eyewitness account and other testimony establishing that on December 28, 1997, defendant shot and killed his friend, Mark White, Jr., a few doors down from a restaurant on River Street in the City of Troy, Rensselaer County. Sentenced to concurrent indeterminate terms of imprisonment, the maximum of which is 25 years to life for the murder, defendant appeals, challenging County Court's discharge of a juror during the trial, the verdict as against the weight of the evidence and the sentence as harsh and excessive.

We affirm. Defendant's initial contention for reversal is directed at County Court's determination during the People's case-in-chief to discharge a juror based upon its finding that she was "grossly unqualified" and not competent to serve in the case (CPL 270.35 [1]). As relevant here, that statute provides that the court must discharge a sworn juror if, prior to deliberations, it determines that the "juror is unable to continue serving by reason of illness or other incapacity * * * or the court finds, from facts unknown at the time of the selection of the jury, that a juror is grossly unqualified to serve in the case or has engaged in misconduct of a substantial nature, but not warranting the declaration of a mistrial" (CPL 270.35 [1]).

Here, after the foreperson informed County Court on the record of concerns regarding a specific juror's competency and comprehension, the court summoned the juror and engaged in an extended in camera inquiry with the juror in the presence of the attorneys asking general questions as well as questions

regarding her ability to follow the trial proceedings. After a discussion outside of the juror's presence in which defendant objected to discharging the juror, the court permitted defense counsel to recall and question the juror further on the record.

Upon review, we find that County Court's inquiry was tactful, probing, relevant and reasonable (*see, People v Anderson,* 70 NY2d 729, 730; *People v Buford,* 69 NY2d 290, 299; *People v Kinred,* 276 AD2d 927) and that both colloquies with the juror supported discharge under CPL 270.35 (1) (*cf., People v Anderson, supra; People v Buford, supra*). We accord latitude and deference to the court's findings, the court being in the best position to assess the juror's competency and capacity (*see, People v Rodriguez,* 71 NY2d 214, 219; *People v Kinred, supra*). We find that the inquiry supports the court's assessment of the juror's "answers and demeanor" (*People v Buford, supra,* at 299; *see, People v Kinred, supra*) and its conclusion that the juror was, at times, confused, childlike, inconsistent and provided odd or nonresponsive answers and was having various difficulties following the trial proceedings. While the juror had several physical disabilities, the court indicated a willingness to accommodate them and clearly based its decision on its findings regarding the juror's cognitive and mental deficiencies manifested during the inquiry. On these facts, we find no error in the discharge of this juror or deprivation of defendant's right to a jury trial before a chosen jury (*see, People v Jeanty,* 94 NY2d 507, 517; *People v Ortiz,* 92 NY2d 955, 957; *People v Anderson, supra; People v Buford, supra,* at 297-299).

Further, "weigh[ing] the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony [adduced at trial]" (*People ex rel. MacCracken v Miller,* 291 NY 55, 62; *accord, People v Bleakley,* 69 NY2d 490, 495), we do not find that the jury's verdict ran contrary to the weight of the evidence. At trial, a witness testified to overhearing defendant and White—both of whom she knew—argue for approximately 90 minutes at the restaurant, during which White told defendant that he had to stop selling drugs from White's apartment. After White left and started walking up the street, defendant left and ran past the witness stating, "I'm going to clap this nigger" and, shortly thereafter, she heard two gunshots. Defendant later came to her apartment and stated, "I shot that nigger," and she observed that defendant had a gun. An eyewitness testified to observing defendant and White, both of whom he knew, argue outside of White's apartment and to actually seeing defendant shoot White. Another witness corroborated seeing de-

fendant fleeing the scene of the shooting carrying a gun. Neither the previous criminal convictions of the first witness and the eyewitness nor the favorable treatment offered to the eyewitness on pending charges in exchange for his trial testimony—all of which was fully explored at trial for the jury's rightful consideration in determining the witnesses' credibility—rendered the verdict against the weight of the evidence.

Finally, despite defendant's relatively young age of 20 at the time of this crime and the fact that he had no prior felony convictions, we cannot conclude under the circumstances of this intentional murder—motivated by defendant's anger over his friend's refusal to permit defendant to deal drugs from his apartment—that County Court abused its discretion in imposing the maximum authorized sentence (see, People v Dolphy, 257 AD2d 681, lv denied 93 NY2d 872).

We have considered defendant's remaining contentions for reversal, including his claims that he was denied the effective assistance of counsel, and find they are not meritorious.

Mercure, J. P., Peters, Rose and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.