THIRD DEPARTMENT, DECEMBER, 2002

(December 5, 2002)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v AKEHATON BRADFORD, Also Known as JOHNNY ISADORE, Appellant. [750 NYS2d 367] —Cardona, P.J. Appeal from a judgment of the Supreme Court (Lamont, J.), rendered October 7, 1999 in Albany County, upon a verdict convicting defendant of the crimes of criminal possession of a controlled substance in the third degree and criminally using drug paraphernalia in the second degree.

In February 1999, defendant, along with Jervis Drew and Terrence Green, was charged with two counts of criminal possession of a controlled substance in the third degree and one count of criminally using drug paraphernalia in the second degree. At trial, defense counsel requested that Drew, who previously accepted a plea bargain and was awaiting sentence, be called to testify outside the presence of the jury to ascertain whether or not he would invoke his Fifth Amendment right not to testify. Drew's attorney indicated that he would advise his client to invoke the Fifth Amendment on any substantive issues relating to his convictions not yet sentenced on and Drew agreed with that advice. Following that inquiry, Supreme Court precluded Drew's testimony.

Thereafter, following the close of proof and during jury deliberations, Supreme Court denied a request by defendant to remove juror number nine. Defendant was convicted of one count of criminal possession of a controlled substance in the third degree and one count of criminally using drug paraphernalia in the second degree, and acquitted on the remaining count in the indictment. Subsequently, Supreme Court denied his motion to set aside the verdict. Defendant was sentenced, as a second felony offender, to an indeterminate prison term of 9 to 18 years on the felony count and to a concurrent definite term of one year on the misdemeanor count.

Initially, defendant contends that Supreme Court incorrectly precluded Drew from testifying inasmuch as Drew was allegedly willing to appear and voluntarily answer questions posed by defense counsel on direct examination. Notably, while a defendant possesses a Sixth Amendment right to present evidence, "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence" (*Taylor v Illinois*, 484 US 400, 410). Instead, "the decision whether to permit defense counsel to call a particular witness solely 'to put him to his claim of privilege against self incrimination in the presence of the jury' rests within the sound discretion of the trial court" (*People v Thomas*, 51 NY2d 466, 472, quoting *People v Sapia*, 41 NY2d 160, 163-164, *cert denied* 434 US 823; *see People v Starr*, 213 AD2d 758, 759, *lv denied* 85 NY2d 980).

Here, defendant's purpose for calling Drew was to establish his claim that the drugs did not belong to him. Supreme Court was concerned that the proffered testimony touched on a substantive matter subject to cross-examination and that, as such, Drew would be entitled to assert the privilege against self-incrimination. The prosecutor confirmed that, if Drew testified that the drugs did not belong to defendant, he would pursue that issue on cross-examination. Specifically, the prosecutor stated that he "would certainly question [Drew] as to if they were his drugs. And then any logical other questions arising from his answer." As set forth above, Drew and his attorney indicated that Drew would claim the privilege against self-incrimination in reference to questions concerning ownership of the drugs. Under the circumstances, we cannot say that it was an abuse of discretion for the court to prohibit Drew's testimony, which was offered for the sole purpose of eliciting *his* refusal to testify, thereby allowing the jury to infer that defendant's contention was correct (*see People v Thomas, supra* at 473).

Next, defendant argues that Supreme Court committed reversible error when it declined to dismiss juror number nine as "grossly unqualified" or having "engaged in misconduct" under CPL 270.35 (1). Upon review of the trial minutes, we cannot agree. The record indicates that, during deliberations and following the dismissal of the alternate jurors, court personnel informed Supreme Court that one of the deliberating jurors, juror number nine, was feeling ill and wanted to go home. The court conducted an in camera interview of the juror in the presence of both counsel wherein the juror indicated that she was anemic, felt weak, nauseous, very tired and wanted to go home. During the interview, the court noted that it was late evening and the matter could be adjourned until the next day. The juror responded favorably to that suggestion whereupon the court declared deliberations in recess and instructed the jury to return the next morning.

The following afternoon, Supreme Court received a note from the foreperson indicating that no matter how the other jurors voted, juror number nine would vote the opposite. Upon inquiry of the court, the foreperson relayed that juror number nine appeared to have an injury to her eye, was sitting separately from the other jurors, talking incoherently and laughing inappropriately. In an in camera inquiry, juror number nine admitted that her feelings were hurt by the other jurors during the course of the trial and deliberations, however, she was able to describe her assessment of the deliberation process in detail. The juror acknowledged that her eye was swollen, but it was not affecting her ability to deliberate. When questioned as to whether she would change her vote to oppose the other jurors, she stated, "I didn't say that in a matter of speaking. I said I noticed that. Whatever way I vote, everybody seems to go the opposite." Upon further questioning, she admitted that she did change her vote at one point to "see where I was and where they were coming from. I mean, we opened it for discussion." Juror number nine assured the court that she was willing to continue deliberating in order to reach a verdict. In a subsequent in camera interview with the court, the foreperson confirmed that juror number nine resumed her spot at the table with the others and the jury wanted to continue deliberating.

CPL 270.35 provides that a court must discharge a juror if "the court finds, from facts unknown at the time of the selection of the jury, that a juror is grossly unqualified to serve in the case or has engaged in misconduct of a substantial nature" (CPL 270.35 [1]). A juror can be considered to be grossly un-

qualified " 'when it becomes obvious that a particular juror possesses a state of mind which could prevent the rendering of an impartial verdict' " (*People v Buford*, 69 NY2d 290, 298, quoting *People v West*, 92 AD2d 620, 622 [Mahoney, P.J., dissenting], *revd on dissenting op below* 62 NY2d 708). The court is to conduct a probing, tactful inquiry into the particular circumstances (*see People v Buford, supra* at 299; *People v Leader*, 285 AD2d 823, *lv denied* 97 NY2d 756; *People v Bailey*, 258 AD2d 807, 808, *lv denied* 93 NY2d 1001). Once the inquiry has occurred, the court's findings will be accorded latitude and great deference upon review (*see People v Leader, supra* at 824; *People v Bailey, supra* at 808).

Here, Supreme Court appropriately conducted in camera interviews of the juror and the foreperson in the presence of both counsel, and the juror was asked multiple questions by the court and counsel concerning her assessment of the deliberation process, her physical condition and her willingness to continue deliberating in order to give defendant a fair trial. The juror's responses to the various questions were appropriate (*cf. People v Leader, supra*). Although it is clear from the record that there was a personality conflict involving the jurors, it is not obvious that juror number nine possessed a state of mind which prevented her from rendering an impartial verdict (*see People v Buford, supra* at 298; *see also People v Rodriguez*, 71 NY2d 214, 219). To the contrary, rather than expressing any bias, she clearly articulated her concern that defendant be treated fairly. We note further that she was agreeable and cooperative when discussing the matter with Supreme Court and the attorneys. Accordingly, we find Supreme Court's inquiry sufficient and conclude that there is no reason to disturb the court's discretionary determination that this juror was not grossly unqualified to serve.

We also do not agree with defendant's claim that juror number nine should have been dismissed for "misconduct of a substantial nature" (CPL 270.35 [1]). Although it appears that harsh words may have been exchanged and juror number nine threatened to walk out of deliberations, the juror assured Supreme Court and the attorneys during the last in camera interview that the other jurors were "a great bunch of people" and she was willing to rejoin them and deliberate according to the instructions administered by the court. Moreover, there was no indication that the other jurors were so distracted by juror number nine that they could not continue deliberating (*see People v Radtke*, 219 AD2d 739, *lv denied* 87 NY2d 924). Notably, the foreperson confirmed that the juror rejoined the

panel after the court's inquiry and a verdict was issued shortly thereafter whereby defendant was acquitted of one of the counts. Given all the circumstances, we find no reason not to give deference to the court's findings (*see People v Matiash*, 197 AD2d 794, *lv denied* 82 NY2d 899).

Crew III, Carpinello, Rose and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.