■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v IRVING FIELDS, Appellant. [830 NYS2d 317]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Reichbach, J.), rendered September 22, 2004, convicting him of murder in the second degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress identification testimony.

Ordered that the judgment is affirmed.

Contrary to the defendant's contention, the Supreme Court properly denied that branch of his omnibus motion which was to suppress identification testimony. There is no requirement that a defendant in a lineup be surrounded by individuals who are nearly identical to him in appearance (*see People v Chipp*, 75 NY2d 327, 336 [1990], *cert denied* 498 US 833 [1990]; *People v Green*, 14 AD3d 578 [2005]; *People v Richards*, 2 AD3d 883 [2003]). The participants in the lineup were similar to the defendant in appearance, and any minor differences between them did not render the lineup impermissibly suggestive or create a substantial likelihood of misidentification (*see People v Green*, *supra*; *People v Villacreses*, 12 AD3d 624 [2004]; *People v Richards*, *supra*; *People v Nieves*, 183 AD2d 854 [1992]).

The defendant's contention that his conviction of depraved indifference murder (*see* Penal Law § 125.25 [2]) was not supported by legally sufficient evidence is unpreserved for appellate review (*see People v Gray*, 86 NY2d 10 [1995]). However, under the circumstances of this case, we review the issue as a matter

of discretion in the interest of justice (*see* CPL 470.15 [3] [c]; [6] [a]).

The evidence adduced at trial established the following. After an argument between the decedent's girlfriend and a woman named Sandra, the defendant accompanied Sandra to the building where the decedent and the decedent's girlfriend resided. When Sandra and the defendant arrived at the building, the defendant did not possess a gun. At that point, the gun, which was later used in the shooting, was in the possession of Sandra. The building had two front doors, an outer door which led onto the outside stoop, and an interior doorway which led into the lobby. The interior door had a translucent curtained window. The testimony established that a person who was outside the interior lobby door could only see the shadows of people moving on the other side of the door, and could not identify their faces. The decedent and his girlfriend exited the building to talk to Sandra. However, the defendant did not speak to the decedent. At some point while the parties were outside, the defendant took the gun from Sandra and put it in his waistband. Thereafter Sandra, the decedent, and the decedent's girlfriend went inside the lobby of the building to continue their discussion, and the defendant remained outside on the building stoop. As Sandra spoke to the decedent and his girlfriend, the defendant fired one shot though the curtained window. This shot entered the decedent's chest and killed him.

The defendant was indicted and tried on charges of intentional murder (*see* Penal Law 125.25 [1]) and depraved indifference murder (*see* Penal Law § 125.25 [2]). The jury acquitted him of intentional murder, but convicted him of depraved indifference murder.

A person is guilty of murder in the second degree (intentional murder) when "[w]ith intent to cause the death of another person, he causes the death of such person" (Penal Law § 125.25 [1] [a]; emphasis added). However, in order to prove a defendant guilty of depraved indifference murder, the evidence must establish beyond a reasonable doubt that under circumstances evincing a depraved indifference to human life, the defendant recklessly engaged in conduct that created a grave risk of death to another person, and thereby caused the death of that person or a third person (*see* Penal Law § 125.25 [2]). "The element of depraved indifference to human life comprises both depravity and indifference, and has meaning independent of recklessness and the gravity of the risk created" (*People v McMillon*, 31 AD3d 136, 139 [2006]).

Under the facts of this case, the jury could have rationally

concluded that the defendant did not intend to kill the victim. It is significant that the defendant did not possess a gun when he first arrived at the decedent's building. In addition, as indicated, there is no evidence that the defendant and the decedent even spoke to one another before the shooting. Most important is the fact that the curtained translucent window of the interior door precluded anyone from identifying individuals in the lobby. Nor is there any evidence that the defendant knew where the decedent was located before he fired a single shot through the interior door window. Accordingly, all of these circumstances weigh against the conclusion that the defendant either arrived at the location with the intent to murder the decedent or that the actual shooting was an intentional murder (*cf. People v Payne,* 3 NY3d 266 [2004]; *People v Suarez,* 6 NY3d 202 [2005]; *People v Hafeez,* 100 NY2d 253 [2003]).

On the other hand, these same facts and circumstances, that is, the firing of a single shot through a doorway window, knowing that there were three people moving about on the other side of that doorway, was clearly reckless conduct which evinced a depraved indifference to human life. Indeed, the defendant had to have been aware that his actions could result in death to another person even if he could not be sure who the victim might be. Accordingly, under such circumstances, this "case fits into the narrow category of cases where depraved indifference murder properly applies" (*People v Campbell,* 33 AD3d 716, 719 [2006]; *see People v Feingold,* 7 NY3d 288 [2006]; *People v Suarez,* 6 NY3d 202 [2005]; *People v Payne,* 3 NY3d 266 [2004]; *People v Webb,* 31 AD3d 796 [2006]).

Thus, the jury's determination was supported by the record, and viewing the evidence in the light most favorable to the prosecution (*see People v Contes,* 60 NY2d 620 [1983]), we find that it was legally sufficient to establish the defendant's guilt of depraved indifference murder beyond a reasonable doubt. Moreover, upon the exercise of our factual review power (*see* CPL 470.15 [5]), we are satisfied that the verdict of guilt was not against the weight of the evidence (*see People v Romero,* 7 NY3d 633 [2006]). Schmidt, J.P., Mastro, Santucci and Fisher, JJ., concur.