■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GABRIEL GILMORE, Appellant. [838 NYS2d 309]—

Appeal from a judgment of the Monroe County Court (John J. Connell, J.), rendered January 9, 2004. The judgment convicted defendant, upon a jury verdict, of murder in the second degree (two counts).

It is hereby ordered that the judgment so appealed from be and the same hereby is reversed on the law, a new trial is granted on count three of the indictment and count two of the indictment is dismissed without prejudice to the People to re-present any appropriate charges under that count of the indictment to another grand jury.

Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of two counts of murder in the second degree (Penal Law § 125.25 [2], [3] [depraved indifference and felony murder]). The evidence at trial established that defendant shot the victim during the course of an attempted robbery, but there were three distinct versions of the manner in which the shooting occurred. Two witnesses testified that defendant shot the victim in the back as the victim ran away. In pretrial statements to a police investigator and defendant's sister, defendant stated that he fired at the victim after the victim resisted the robbery attempt by pulling out a gun and pointing it at defendant. At trial, however, defendant testified that he ran away when the victim pulled out a gun and started shooting at him and that he fired backward in the victim's direction. The jury acquitted defendant of intentional murder but found him guilty of depraved indifference murder and felony murder.

We agree with defendant that reversal is required because County Court erred in failing to apply the proper standard in discharging a sworn juror over defendant's objection, based on the statement of the juror that his brother was imprisoned on "trumped-up charges." "[T]he standard for disqualifying a sworn juror over defendant's objection [pursuant to CPL 270.35 (1)] is satisfied only 'when it becomes obvious that a particular juror possesses a state of mind which would prevent the rendering of an impartial verdict' " (*People v Buford*, 69 NY2d 290, 298 [1987]; *see People v Anderson*, 70 NY2d 729, 730 [1987];

*People v Telehany*, 302 AD2d 927, 928 [2003]). The court failed to apply that standard here.

We further agree with defendant, and the People correctly concede, that the evidence is legally insufficient to support the conviction of depraved indifference murder. The one-on-one shooting was not "marked by uncommon brutality" (*People v Payne*, 3 NY3d 266, 271 [2004], *rearg denied* 3 NY3d 767 [2004]), "or any other hallmarks of wanton recklessness necessary to demonstrate 'circumstances evincing a depraved indifference to human life' " (*People v Dudley*, 31 AD3d 264, 264 [2006], *lv denied* 7 NY3d 866 [2006]). Rather, while there is a rational view of the evidence that would support a finding that defendant's conduct was reckless, we conclude that such conduct "did not fall within the small, and finite, category of cases evidencing utter depravity, uncommon brutality and inhuman cruelty required for depraved indifference murder" (*People v McPherson*, 6 NY3d 202, 216; *see People v Packer*, 31 AD3d 1169, 1170 [2006], *lv denied* 7 NY3d 869 [2006]). We note, however, that the evidence is legally sufficient to support a conviction of the lesser included offense of manslaughter in the second degree (Penal Law § 125.15 [1]; *see Packer*, 31 AD3d at 1170). Because there must be a new trial on the felony murder count based on the court's error in discharging the sworn juror (*see People v Cargill*, 70 NY2d 687, 689 [1987]), the depraved indifference murder count is dismissed without prejudice to the People to re-present any appropriate charges under that count to another grand jury (*see People v Gonzalez*, 61 NY2d 633, 635 [1983]; *People v Williams*, 210 AD2d 914, 914-915 [1994]).

All concur except Scudder, P.J., who dissents and votes to affirm in the following memorandum.

Scudder, P.J. (dissenting). I respectfully dissent and would affirm the judgment of conviction. The majority concludes that reversal is required because County Court applied an incorrect standard in discharging a sworn juror. The majority further concludes that, as the People "correctly concede," the evidence is legally insufficient to support the conviction of depraved indifference murder (Penal Law § 125.25 [2]). I disagree in both respects and, in my view, the People's concession is incorrect.

Addressing first the issue concerning the sworn juror, I note that the record establishes that, after the juror was sworn, he disclosed to the court that his brother had been convicted of a crime in Pennsylvania. While the court's subsequent inquiry of the juror was not stenographically recorded, the court placed sufficient information on the record the following day to demonstrate that it had made "a probing, tactful inquiry into the par-

ticular circumstances" (*People v Bradford*, 300 AD2d 685, 688 [2002], *lv denied* 99 NY2d 612 [2003]; *see generally People v Buford*, 69 NY2d 290, 299 [1987]). During the course of that inquiry, the juror stated that his brother had been convicted of "trumped-up charges" and that the police and prosecutors had "manufactured evidence" against his brother. The juror further indicated that he had spent much of his own money to obtain his brother's release, which occurred "not . . . too long ago," and that the conviction had caused problems among the juror's family members. The juror was "very teary-eyed, [and] very emotional" and, when the court asked whether he could separate his brother's situation from this case, remain fair to both sides, and perform his role as a juror, the juror was unable to say that he could do so. Instead, he repeatedly stated, "I don't know." The court found that, while the juror at one point stated that he "thought" he could set aside his brother's situation, most of his responses, and in particular his later responses to the court's questions, indicated that he did not know if he could be fair and impartial. The court consequently discharged the juror, stating: "[Defense Counsel], you indicated that you felt that he had not gone enough the other way to say that he definitely couldn't be sure, but I think that—and I took the position and ruled in that way—that because he couldn't unequivocally say that he could perform his role as a juror—I don't think the law requires that he unequivocally say that he cannot serve as a juror. *I think the standard is whether he can unequivocally say that he could perform the role of a juror*, and for that reason I excused him over the objection of the defense" (emphasis added).

The majority focuses on the emphasized portion of the court's statement in concluding that the court applied the wrong legal standard for discharging a sworn juror. The correct standard, set forth in CPL 270.35 (1), is whether the juror is "grossly unqualified." That standard has been further defined by the Court of Appeals as whether the " 'juror possesses a state of mind which would prevent the rendering of an impartial verdict' " (*Buford*, 69 NY2d at 298). The majority concludes that reversal is required because the court articulated an incorrect standard for discharging the juror, relying on *Buford*, but the majority fails to address the issue whether the juror was in fact "grossly unqualified." In my view, *Buford* requires the analysis of that issue.

Neither *Buford* nor its companion case, *People v Smitherman*, supports the conclusion that the use of an incorrect standard for discharging a sworn juror requires reversal of a judgment of

conviction. In both cases, the jurors at issue assured the court during the respective inquiries that they could remain fair and impartial (see Buford, 69 NY2d at 293-297), but the jurors nevertheless were discharged because the respective courts could not be sure that the juror in each case could be fair and impartial despite those assurances (see id. at 294-297). The Court of Appeals, however, concluded differently. The Court concluded first that neither of the two jurors was in fact grossly unqualified and then addressed the standards employed by the respective courts in discharging the jurors (see id. at 299-300). The Court concluded with respect to the juror in Buford that "the court unquestionably applied a standard less stringent than the 'grossly unqualified' standard established in CPL 270.35" (id. at 300). With respect to the jurors in both Buford and Smitherman, the Court concluded that the respective courts "could not have been convinced that [the] juror was grossly unqualified so as to warrant discharge over defendant's objection" (id.). The Court explained that its conclusion was "reinforced by the fact that the court[s] . . . employed a standard other than 'grossly unqualified' as required by CPL 270.35" (id.). Thus, although the courts in Buford applied an incorrect standard in discharging the jurors, the determinative issue warranting reversal was whether the jurors were in fact "grossly unqualified under CPL 270.35" (id. at 299).

Here, the court's statements with respect to the juror at issue, taken as a whole, establish that the court's statement that "the standard is whether he can unequivocally say that he could perform the role of a juror" was not the "standard" actually used by the court in discharging the juror. Rather, it was the criteria by which the court determined whether the juror met the grossly unqualified standard. The court's use of the term "standard" did not refer to a standard of law, but instead referred to the common, everyday meaning of that term.

Thus, the court applied the correct standard for discharge pursuant to CPL 270.35 (1), and determined that the juror was grossly unqualified because he possessed a state of mind that would prevent him from rendering an impartial verdict (see id. at 298). I note that the juror at issue was one of two jurors who were discharged after being sworn. The court treated both jurors alike and, in discharging the other juror, the court determined that he was "grossly unqualified to sit as a juror and . . . unable to perform his duties as a juror." The record therefore establishes that the court was aware that the standard for discharging a sworn juror is the "grossly unqualified" standard set forth in CPL 270.35 (1).

Inasmuch as the court applied the correct statutory standard, its determination to dismiss the juror should be accorded deference. The trial court "ha[s] the advantage of observing the juror's demeanor, intonations and emotional state" (*People v Johnson*, 252 AD2d 967, 967 [1998], *affd* 92 NY2d 976 [1\ 98]), and is therefore in the best position to assess the significance of a juror's statements (*see generally People v Bunch*, 278 AD2d 501, 502 [2000]; *People v Bamfield*, 208 AD2d 853 [1994], *lv denied* 84 NY2d 1009 [1994]). For that reason, once the court makes the requisite inquiry, "the court's findings will be accorded latitude and great deference upon review" (*Bradford*, 300 AD2d at 688; *see People v Leader*, 285 AD2d 823, 824 [2001], *lv denied* 97 NY2d 756 [2002]; *Bunch*, 278 AD2d at 502; *see also People v Burse*, 299 AD2d 911, 912 [2002], *lv denied* 99 NY2d 613 [2003]).

Even assuming, arguendo, that the court applied an incorrect standard in discharging the juror, I conclude that reversal is nevertheless unwarranted. The issue here is not what the court stated, but rather what the court did. In other words, if the juror was indeed grossly unqualified, the court properly discharged him and, if he was not grossly unqualified, the court erred. Here, the record supports the conclusion that the juror was grossly unqualified to continue serving as a juror. The belief of the juror that his brother was convicted of "trumped-up charges" and that the police and prosecution "manufactured evidence," together with his repeated assertions that he did not know if he could be fair and impartial, given in response to the statement of the court that it "need[ed] to know . . . whether [the juror] would be able to perform his role as a juror and be open minded and fair to both sides," demonstrate that the juror possessed a state of mind that would prevent him from rendering an impartial verdict (*see Buford*, 69 NY2d at 298; *People v Gozdalski*, 239 AD2d 896, 897 [1997], *lv denied* 90 NY2d 858 [1997]; *People v O'Kane*, 224 AD2d 182 [1996], *lv denied* 88 NY2d 939 [1996]).

I further disagree with the majority's conclusion that the evidence is legally insufficient to support the conviction of depraved indifference murder. Viewing the evidence in the light most favorable to the People, and discounting the facts relating to the intentional murder charge and the defense of justification, both of which the jury rejected, I conclude that there is a valid line of reasoning and permissible inferences that could lead a rational person to conclude that defendant committed the crime of depraved indifference murder (*see generally People v Bleakley*, 69 NY2d 490, 495 [1987]). After rejecting the intentional mur-

der count and the justification defense, the jury was left with a version of the facts pursuant to which defendant fired his weapon while running away from the victim and with his back to the victim. Defendant never looked back to see where he was shooting, and he was not certain that he had even pointed the gun in the direction of the victim. He shot multiple times, the shooting was unprovoked, and he did not intend to kill the victim or anyone else. Defendant knew when he fired the gun that both the victim and his friend were in the direction in which he fired, and he knew that there were at least two other bystanders in the vicinity. The shooting occurred at about 10:15 A.M., and an eyewitness to the shooting testified that he saw three individuals, in addition to the victim and the victim's friend, standing nearby at the time. In my view, these circumstances are sufficient to establish that defendant acted with " 'an utter disregard for the value of human life' " (*People v Feingold*, 7 NY3d 288, 296 [2006]), and that his conduct was "so wanton, so deficient in a moral sense of concern, so devoid of regard of the life or lives of others, and so blameworthy" as to constitute the uncommon brutality required for depraved indifference murder (*People v Gonzalez*, 1 NY3d 464, 469 [2004] [internal quotation marks omitted]; *see generally People v Fields*, 37 AD3d 733, 734-735 [2007]; *People v Campbell*, 33 AD3d 716, 717-719 [2006], *lv denied* 8 NY3d 879 [2007]). I would therefore affirm the judgment of conviction. Present—Scudder, P.J., Hurlbutt, Green and Pine, JJ.