■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ZUFER CECUNJANIN, Appellant. [889 NYS2d 691]—

Peters, J. Appeal from a judgment of the County Court of Franklin County (Richards, J.), rendered August 4, 2008, upon a verdict convicting defendant of the crimes of attempted sexual abuse in the first degree and unlawful imprisonment in the second degree.

The victim, accompanied by Lisa Yando and Angela King, visited a night club owned by defendant in the Village of Malone, Franklin County. They arrived around midnight but Yando soon left them. The victim, King and one of King's friends, Melissa Martin, remained at the club into the early morning hours of the following day. After socializing with others and dancing, the victim, who had previously come to know defendant in the course of her employment, sat for some time in a corner of the bar with him and three of his family members. During that time, the victim became increasingly intoxicated, eventually reaching a point where she was observed to be having difficulty keeping herself upright. Defendant then allegedly began trying to kiss the victim and place his hands up her shirt. Shortly thereafter, defendant allegedly escorted the victim into an adjacent storage room and shut the door. Concerned over this, King called Yando who, in turn, summoned the victim's parents. According to the victim, while in the storage room, defendant continued in his attempts to place his hand under her shirt and kiss her, and also tried to persuade her to go with him to an upper floor of the building. Although the victim tried to leave the storage room on more than one occasion, defendant prevented her from doing so. When the victim's parents arrived, her father

retrieved the victim from the storage room and walked her outside, where the police were waiting.

Defendant was thereafter indicted for attempted sexual abuse in the first degree, unlawful imprisonment in the second degree and forcible touching. Following a jury trial, defendant was convicted of attempted sexual abuse in the first degree and unlawful imprisonment in the second degree.* He was thereafter sentenced to terms of incarceration of one year on the attempted sexual abuse count and 180 days on the unlawful imprisonment count. He now appeals.

Defendant first challenges the sufficiency of the evidence supporting his conviction of attempted sexual abuse in the first degree, arguing that the People presented no evidence by which the jury could have inferred that the victim was physically helpless. In order to establish the crime of attempted sexual abuse in the first degree, the People were required to show that defendant attempted to subject the victim to sexual contact at a time when she was "incapable of consent by reason of being physically helpless" (Penal Law § 130.65 [2]; see Penal Law § 110.00). A person is considered to be "physically helpless" when he or she "is unconscious or for any other reason is physically unable to communicate unwillingness to an act" (Penal Law § 130.00 [7]).

Here, the People proffered extensive evidence of the victim's state of inebriation, including proof that her blood alcohol content was found to be .267% shortly after the incident, as well as testimony from the victim, King and Martin regarding the victim's physical condition. According to King, when she returned with Martin from the outdoor patio, she observed the victim slouched over in her seat with "her head down . . . just kind of lifeless just sitting there" with defendant's hand under her shirt. Similarly, Martin testified that the victim was "bobbing her head" and "slouched over" in her stool when defendant had his hand on the victim's inner thighs. Although the victim recalled placing her arms together over her chest at one point in order to prevent defendant from succeeding in putting his hands up her shirt, she also testified that things were "pretty blurry" after that and the next thing she remembers was hearing a door slam shut after defendant pulled her in a room. Defendant asserts that the victim's recollection is inconsistent with Martin's and King's observations of the victim's

---

* Prior to submission to the jury, the People conceded that the forcible touching count was a lesser included offense of the attempted sexual abuse count. Thus, by virtue of the guilty verdict on the attempted sexual abuse count, the charge of forcible touching was dismissed (see CPL 300.40 [3] [b]).

condition. However, the fact that the victim was able to resist defendant's advancements at one point in time does not mean that she retained this ability throughout the entire incident. Indeed, "[t]he state of the victim's physical helplessness at any given moment is largely a question of fact" for the jury (*People v Teicher*, 52 NY2d 638, 649 [1981]). Viewing the evidence in a light most favorable to the People (*see People v Contes*, 60 NY2d 620, 621 [1983]; *People v Collins*, 56 AD3d 809, 810 [2008], *lv denied* 11 NY3d 923 [2009]), there was a valid line of reasoning and permissible inferences from which the jury could conclude that the victim was physically helpless when defendant attempted to subject her to sexual contact (*see People v Teicher*, 52 NY2d at 646; *People v Thomas*, 21 AD3d 643, 645 [2005], *lv denied* 6 NY3d 759 [2005]; *People v Himmel*, 252 AD2d 273, 276 [1999], *lv denied* 93 NY2d 899 [1999]; *see also People v Ferrer*, 250 AD2d 860, 861 [1998], *lvs denied* 92 NY2d 879 [1998], 93 NY2d 852 [1999]).

We next turn to defendant's contention that his convictions were against the weight of the evidence. At trial, defendant testified that he never touched the victim on the breasts, thighs or in any other inappropriate manner. He also proffered the testimony of several bar patrons and the bouncer working that night, all of whom stated that they did not observe defendant inappropriately touch the victim or try to pull her into the back room, although many of these witnesses conceded that they were not paying much attention. One of the bartenders working that evening testified that she originally discovered the victim alone in the storage room opening a cooler and that after she alerted defendant to the victim's presence, he entered the storage room and told the victim that she had to leave. Defendant stated that he was never alone in the storage room with the victim and both he and this bartender testified as to his unsuccessful attempts to remove the victim from the room.

Since a different verdict would not have been unreasonable in light of this testimony, we must "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (*People v Bleakley*, 69 NY2d 490, 495 [1987] [internal quotation marks and citations omitted]; *see People v Danielson*, 9 NY3d 342, 348 [2007]; *People v Baker*, 58 AD3d 1069, 1071 [2009], *lv granted* 12 NY3d 851 [2009]). Contrary to the testimony proffered by the defense, the victim explained how she was forcibly pulled by defendant into the storage room against her will, which act was witnessed and testified to by both King and Martin. The victim also testified that she wanted to leave the

storage room, repeatedly told defendant of her desire to leave and kept trying to flee the room, but was prevented from doing so because defendant was holding her arm. Faced with these conflicting accounts of what transpired, the jury chose to credit the People's witnesses and, on the record before us, we find no reason to reject the jury's decision in this regard given its unique ability to view the witnesses, observe demeanor and hear the testimony (*see People v Diotte*, 63 AD3d 1281, 1283 [2009]; *People v Nealon*, 36 AD3d 1076, 1078 [2007], *lv denied* 8 NY3d 988 [2007]). While defendant points out that the victim, King and Martin had consumed alcohol throughout the evening and that certain portions of their testimony were inconsistent with their prior statements about the incident, as well as each other's testimony, both their level of inebriation as well as the inconsistencies in their testimony were thoroughly explored during trial and did not render their testimony "so unworthy of belief as to be incredible as a matter of law" (*People v Williams*, 46 AD3d 1024, 1026 [2007] [internal quotation marks and citations omitted]; *see People v Hayden*, 60 AD3d 1155, 1157 [2009], *lv denied* 12 NY3d 854 [2009]; *People v Littebrant*, 55 AD3d 1151, 1155 [2008], *lv denied* 12 NY3d 818 [2009]; *People v Morey*, 304 AD2d 855, 856 [2003], *lv denied* 100 NY2d 564 [2003]). Viewing the evidence regarding both incidents in a neutral light and according deference to the jury's credibility determinations (*see People v Romero*, 7 NY3d 633, 644 [2006]; *People v Collins*, 56 AD3d at 810), we find that defendant's convictions were not against the weight of the evidence.

Defendant also challenges the adequacy of County Court's investigation into two allegations of juror misconduct. It is well settled that a sworn juror must be dismissed if found to be "grossly unqualified to serve" (CPL 270.35 [1]), which occurs "only when it becomes obvious that a particular juror possesses a state of mind which would prevent the rendering of an impartial verdict" (*People v Buford*, 69 NY2d 290, 298 [1987] [internal quotation marks and citation omitted]; *see People v Rodriguez*, 71 NY2d 214, 219 [1988]; *People v Lapage*, 57 AD3d 1233, 1235 [2008]). In investigating allegations of juror misconduct, the trial court must conduct a "probing, tactful inquiry" into the specific circumstances (*People v Bradford*, 300 AD2d 685, 688 [2002], *lv denied* 99 NY2d 612 [2003]; *see People v Cargill*, 70 NY2d 687, 688 [1987]; *People v Bailey*, 258 AD2d 807, 808 [1999], *lv denied* 93 NY2d 1001 [1999]) and, so long as that inquiry has occurred, the court's determination will be accorded latitude and great deference upon review (*see People v Littebrant*, 55 AD3d at 1154; *People v Bradford*, 300 AD2d at 688; *People v Leader*, 285 AD2d 823, 824 [2001], *lv denied* 97 NY2d 756 [2002]).

During jury deliberations, defense counsel informed the court that he had learned that juror No. 54 harbored an intention to convict defendant regardless of the evidence. In response to this allegation, County Court conducted an extensive inquiry into the matter, in which defense counsel participated, by questioning juror No. 54's spouse and other individuals under oath. Contrary to defendant's assertions, County Court's inquiry into the matter was sufficient so as to satisfy it that juror No. 54 was not grossly unqualified to serve (*see People v Buford*, 69 NY2d at 299-300; *People v Wallace*, 293 AD2d 872, 873-874 [2002]). To the extent that defendant now argues that the inquiry was inadequate because the court failed to question juror No. 54 regarding the matter, this issue is unpreserved inasmuch as he neither informed the court that its questioning was insufficient nor requested that juror No. 54 be questioned (*see People v Hicks*, 6 NY3d 737, 739 [2005]; *People v Kelly*, 65 AD3d 714, 715 [2009]; *see also* CPL 470.05 [2]).

Turning to the second instance of alleged juror misconduct, also raised during jury deliberations, defense counsel claimed to have received information indicating that juror No. 80's husband is a friend of both a County Judge in Franklin County and the Franklin County District Attorney. Despite defendant's assertions to the contrary, this juror did not fail to truthfully answer any of County Court's questions during voir dire, since the court only asked whether any of the prospective jurors "or anyone close to [them] *work* for a . . . District Attorney's office." Moreover, it was not juror No. 80 herself, but only her husband, who was alleged to be a friend of those individuals, neither of whom had any involvement with defendant's trial. Without more, this type of mere "acquaintanceship . . . does not raise a legitimate issue as to whether she was grossly unqualified" (*People v Garraway*, 9 AD3d 506, 507 [2004], *lvs denied* 3 NY3d 674, 740 [2004] [internal quotation marks and citations omitted]). As such, we cannot conclude that County Court erred in determining that a *Buford* inquiry was unnecessary (*see id.*).

Finally, we have reviewed defendant's contention that he was deprived of the effective assistance of counsel and find it to be without merit. " 'The constitutional right to the effective assistance of counsel does not mean that the representation was error free in every respect, but simply that defendant was afforded a fair trial' " (*People v Jackson*, 48 AD3d 891, 893 [2008], *lv denied* 10 NY3d 841 [2008], quoting *People v Damphier*, 13 AD3d 663, 664 [2004]; *see People v Fuller*, 50 AD3d 1171, 1176 [2008], *lv denied* 11 NY3d 788 [2008]). Our review of the record

indicates that counsel pursued an appropriate omnibus motion on defendant's behalf, offered a reasonable theory of defense which he consistently pursued throughout the trial, made appropriate objections, presented numerous defense witnesses, pointed out inconsistencies in the testimony of the People's witnesses, and vigorously argued for dismissal of the charges. His assertion that counsel should have more effectively cross-examined and impeached the People's witnesses amounts to no more than a hindsight disagreement with trial tactics, which does not rise to the level of ineffectiveness (*see People v Hamms*, 55 AD3d 1142, 1145 [2008], *lv denied* 11 NY3d 925 [2009]; *People v Page*, 225 AD2d 831, 834 [1996], *lv denied* 88 NY2d 883 [1996]). While we agree that counsel should have pursued an alleged discrepancy in the time stamps of the various surveillance cameras, this single failing was not "sufficiently egregious and prejudicial" so as to compromise defendant's right to a fair trial (*People v Caban*, 5 NY3d 143, 152 [2005]; *see People v Turner*, 5 NY3d 476, 480 [2005]; *People v Prue*, 26 AD3d 671, 671-672 [2006], *lv denied* 7 NY3d 816 [2006]). When viewed in totality and at the time of the representation, counsel's performance was meaningful (*see People v Baldi*, 54 NY2d 137, 147 [1981]; *People v Jackson*, 48 AD3d at 894).

Cardona, P.J., Lahtinen, Malone Jr. and Stein, JJ., concur. Ordered that the judgment is affirmed.