[947 NE2d 149, 922 NYS2d 258]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ZUFER CECUNJANIN, Appellant.

Argued February 17, 2011; decided April 5, 2011

## POINTS OF COUNSEL

*Kindlon Shanks & Associates*, Albany (*Terence L. Kindlon* and *Kathy Manley* of counsel), for appellant. I. The attempted sexual abuse conviction was based on legally insufficient evidence of physical helplessness. (*People v Littebrant*, 55 AD3d 1151; *People v Chapman*, 54 AD3d 507; *People v Teicher*, 52 NY2d 638; *People v Huurre*, 193 AD2d 305, 84 NY2d 930; *People v Thomas*, 21 AD3d 643; *People v Himmel*, 252 AD2d 273; *People v Ferrer*, 250 AD2d 860; *People v Conto*, 218 AD2d 665; *People v Clyburn*, 212 AD2d 1030.) II. The convictions should be reversed based on ineffective assistance of counsel. (*People v Benevento*, 91 NY2d 708; *People v Baldi*, 54 NY2d 137; *People v Caban*, 5 NY3d 143; *People v Hull*, 71 AD3d 1336; *People v Bartley*, 298 AD2d 160; *United States v Tarricone*, 996 F2d 1414; *People v Clarke*, 66 AD3d 694; *People v Dean*, 50 AD3d 1052; *People v Tillman*, 179 AD2d 886; *People v Jenkins*, 68 NY2d 896.) III. The trial court failed to adequately investigate possible juror misconduct. (*People v Rodriguez*, 100 NY2d 30; *People v Arnold*, 96 NY2d 358; *People v Estella*, 68 AD3d 1155; *People v Rivera*, 304 AD2d 841; *People v Littebrant*, 55 AD3d 1151; *People v Maragh*, 94 NY2d 569; *People v Mosley*, 56 AD3d 1140; *People v Paulick*, 206 AD2d 895.)

*Andrew J. Wylie, District Attorney*, Plattsburgh (*Timothy G. Blatchley* of counsel), for respondent. I. Appellant's conviction for attempted sexual abuse was supported by legally sufficient evidence of physical helplessness. (*People v Ficarrota*, 91 NY2d 244; *People v Contes*, 60 NY2d 620; *People v Zeagers*, 248 AD2d 739; *People v Baker*, 251 AD2d 592; *People v Reeves*, 236 AD2d 635; *People v Bleakley*, 69 NY2d 490; *People v Borthwick*, 51 AD3d 1211; *People v Chapman*, 54 AD3d 507; *People v Teicher*, 52 NY2d 638.) II. Appellant was afforded meaningful representation as is required by the State and Federal Constitutions. (*People v Benevento*, 91 NY2d 708; *People v Satterfield*, 66 NY2d 796; *People v Garcia*, 187 AD2d 868; *People v Hull*, 71 AD3d 1336; *People v Baldi*, 54 NY2d 137; *People v Figueroa*, 187 Misc 2d 539.) III. Appellant was afforded a fair trial and was not prejudiced by any juror misconduct. (*People v Rivera*, 304 AD2d 841; *People v Rodriguez*, 100 NY2d 30.)

### OPINION OF THE COURT

SMITH, J.

At defendant's trial, the People contended, and the jury found, that he had attempted to subject a physically helpless woman to

sexual contact. The evidence fails to support the jury's finding on this issue, and we therefore vacate defendant's conviction for attempted sexual abuse.

I

The alleged victim, whom we will call Catherine, went with friends to dance at a bar defendant owned. She had been drinking before she arrived at the bar, continued after she got there, and became extremely drunk. A blood test taken shortly after the events at issue here showed a blood alcohol concentration of .267%. (A driver is considered intoxicated with a .08% concentration [Vehicle and Traffic Law § 1192 (2)].)

Defendant and Catherine were acquaintances, and they engaged in some mild displays of affection after she arrived at the bar; Catherine hugged him, and permitted him to put his arm around her shoulders. But the People presented evidence that, as Catherine showed more severe signs of intoxication, defendant became more aggressive. He made "rude comments" to her as she sat on a bar stool drinking, and when she tried to get up to find one of her friends he prevented her by holding her wrist. He tugged on her shirt, and tried to put his hands under it. He held her chin, and tried to turn it towards him. He touched her thighs around where her shorts ended, and kissed her once. Holding her by her wrist or waist, he led her to a nearby storage room, pulled her in and closed the door.

Catherine found herself in the storage room with defendant and another man. Defendant held her wrist; the other man pulled at (but did not remove) her shorts; one or both of them pulled at her shirt. Defendant tried to put his hands under her shirt, and both men tried to kiss her. They asked her to go upstairs with them. She refused to go upstairs, and she resisted their physical advances by sitting on the floor. At one point she tried to leave the room but was unable to open the door (though the door had no lock). When Catherine's cell phone rang, defendant prevented her from answering, and took the phone away. The encounter ended after one of Catherine's friends called her family, and her father arrived and led her out.

Catherine did not describe her own mental or physical condition except to say that "it was pretty blurry" from around the time defendant's aggressive conduct began. Two of her friends, who observed her as she sat on the bar stool, supplied more information. One said that she was "slouched over in the seat" "very kind of looking out of it," that "her head was bobbing

back and forth" and that "she seemed very kind of lifeless." The other friend gave a similar description, adding that Catherine did not respond when someone called her name, that at one point she slipped off the stool, and that defendant helped her back up. Catherine's friends could not see her when she was in the storage room; Catherine's own testimony does not suggest that she was ever unconscious, or too weak to offer resistance, during that part of the encounter.

Defendant was indicted for attempted sexual abuse in the first degree, unlawful imprisonment in the second degree and forcible touching. The jury convicted him on the first two counts, and, in compliance with the trial judge's instructions, did not reach the third. The Appellate Division affirmed the conviction and sentence (67 AD3d 1072 [2009]). A Judge of this Court granted leave to appeal, and we now modify the judgment to vacate the conviction for attempted sexual abuse.

## II

Defendant was charged with, and convicted of, an attempt to violate Penal Law § 130.65 (2), which says:

> "A person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact . . .

> "When the other person is incapable of consent by reason of being physically helpless . . . ."

"Sexual contact" and "physically helpless" are defined in section 130.00 of the Penal Law. " 'Sexual contact' means any touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either party" (Penal Law § 130.00 [3]). " 'Physically helpless' means that a person is unconscious or for any other reason is physically unable to communicate unwillingness to an act" (Penal Law § 130.00 [7]).

There is no evidence, and the People have never claimed, that defendant actually subjected Catherine to sexual contact. He was charged only with an attempt to commit sexual abuse, not with the completed crime. This raises a question: If a person is physically helpless, how can an attempt to subject her to sexual contact fall short of success? It could theoretically happen—for example, a third person could intervene—but the evidence does not show that it happened here.

There is no evidence that Catherine was physically helpless at any time after she entered the storage room. The People's case

must therefore depend on what happened earlier, while she sat on a bar stool. We assume that the testimony of her friends—that she was slouched and unresponsive, with her head bobbing back and forth, and that she once slid off the stool—would support a finding that there were times when she became physically helpless while she was sitting there. There is no evidence, however, that defendant tried to subject her to sexual contact during any of those times. The only evidence of physical advances that Catherine was unable to resist is the testimony of one of her friends. That witness said that, while Catherine was "kind of lifeless," defendant had his hands "under her shirt," but it is clear in context that she was not saying he touched Catherine's breasts; the witness added that defendant "leaned over and . . . gave her a kiss," eliciting no response from Catherine. The witness was then asked: "Did he touch her in any other way that you saw?" The answer was no.

The People argue that the conviction for attempted sexual abuse can be sustained on the basis of the following passage from Catherine's testimony:

> "I just remember holding my arms up like this
> because he was trying to put like his hands under
> my shirt. I would hold my arms up close to me like
> to block putting his hands in my shirt."

The People thus argue, in substance, that Catherine was physically helpless at the moment she prevented defendant from fondling her. The argument is self-refuting; she could not have blocked him if she were helpless. A reading of the record as a whole shows that Catherine may well have been physically helpless at some times, and that defendant may have attempted to subject her to sexual contact at other times, but there is no evidence that the two occurred together.

The People rely on *People v Teicher* (52 NY2d 638 [1981]), but the facts of that case are, in a critical way, the opposite of those present here. The defendant in *Teicher* was a dentist who abused his patients after putting them under sedation. One of his victims testified that, after losing consciousness, she became conscious again but was still weak from the drug's effects. She testified that the defendant "lifted her hand and placed it on his pants directly over his penis" and that she "was able to pull her hand away" (*id.* at 644). We held that, though the victim was strong enough to remove her hand, "the trier of fact was entitled to infer that she lacked capacity to consent to the original touching because of her generally weakened condition" (*id.*

at 646). But in this case, the evidence shows that, when defendant tried to subject Catherine to sexual contact, she could and did withhold her consent—with the result that the sexual contact did not occur.

## III

What we have said requires us to vacate defendant's conviction for attempted sexual abuse, and to dismiss that count of the indictment. Defendant contends that he is also entitled to a new trial on the charge of unlawful imprisonment, asserting that his counsel was ineffective and that the trial court failed to investigate allegations of juror misconduct. These arguments are without merit. Trial counsel's performance was competent, and the trial judge's handling of the juror misconduct claims was entirely appropriate.

Accordingly, the order of the Appellate Division should be modified to vacate defendant's conviction for attempted sexual abuse in the first degree, and to dismiss the first count of the indictment, and otherwise affirmed. The case should be remitted to County Court for resentencing.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, PIGOTT and JONES concur.

Order modified, etc.